OPINION OF THE COURT.
It lias been correctly said in the argument that the. question for the Court in this case is not whether the act. complained of is a just and proper one, hut whether the legislature had a right to make it? The power and the, duty of the Court to declare an act void, which violates ''"any right of the citizen secured, to him by the constitU’ *476 tion, have been admitted on both sides, and I feel so strong a sense of this duty, that if the violation complained of was manifest, I should not only declare the act void ; but in doing so I should think that I rendered a more important service to my country th:m I could by discharging the ordinary duties of a Judge for many years.
It is the peculiarand characteristic excellence of the free governments of America, that the legislative power is not supreme; but that it is limited and controlled by written constitutions, to which the Judges, who are sworn to defend them, are authorised to give a transcendent operation over all laws that may be made in derogation of them. This judicial check affords a security here for civil liberty, which belongs to no other governments in the world ; and if the Judges will every where faithfully exercise it, the liberties of the Ame-ran nation may be rendered perpetual. But while I assert this power in the Court, and insist on the great va- ■ Hue of it to the community, I am not insensible of the high deference which is due to the legislative authority. It is supreme in all cases in which it is not restrained by the constitution ,• and as it is the duty of the legislators as well as of the Judges to consult this and conform their acts to it, so it ought to be presumed that all their acts are conformably to it, unless the contrary is manifest. This confidence in the wisdom and integrity of the legislature, is necessary to ensure a due obedience to its authority; for if this is frequently questioned, it must tend to diminish that reverence for the laws which is essential to the public safety and happiness. I am not, therefore, disposed to examine with scrupulous exactness the validity of a law. It would be unwise to do so on another account. The interference of the judicial power with legislative acts, if frequent or on dubious grounds, might occasion so great a jealousy of this power, and so general a prejudice against it, as to lead to measures which might end in the total overthrow of the independence of the judiciary, and with it this best pres *477 servative of the constitution. The validity of a law ought not, then, to be questioned, unless it is so obviously repugnant to the constitution, that when pointed out by the Judges,, all men of sense and reflection ip. the community may perceive the repugnancy. By such a cautious exercise of this judicial check, no jealousy of it will be excited, the public confidence in it may be promoted, and its salutary effects be justly and fully appreciated.
I will now examine, consistently with this general view of the subject, the constitutional objections which have been made to the act under consideration. And 1st, it was contended, that this is an ex post facto law, because it deprives the defendant of the right of prac-tising as a solicitor while he holds the office of ordinary, which it was lawful for him to do when he was appoint* ed to that office, and which he has continued to do ever since. It mast be admitted that this is, in one sense, a retrospective operation of the law; but this is not the technical and appropriate meaning of an expost facto law. It appears from the best authorities, that the words ex post facto, when applied to a lav/ refer only to crimes and penalties. J udge Blackstone is explicit on this subject: “ The making of laws ex post facto,” says he, “ is when after an action indifferent in itself is committed, the legislature then, for the first time, declares it to have been a crime, and inflicts a punishment upon the person, who has committed it.” 1 Black. Com. 46.
If we look into the constitutions of several of the other states, we shall find that this restricted sense of the words expost facto is expressly declared to be the only sense in which they are understood. And in. the case of Caulder and wife v. Bull and wife, determined in the Supreme Court of the United States, the same construction was given to these words by all the Judges.
The constitution of the United States declares that no state shall pass any bill of attainder, ex post fac-to law, or law impairing the obligation of contracts, (which are the very words of our constitution,) and *478 JlldSe ^^erson in delivering his opinion in- the case, asks where is the necessity or use of the latter words, if a law impairing the obligation of contracts becomprc-hended within the terms ex post facto ? It is obvious x from the specification of contracts in the last member of ^.¡e cjause ^at the framers of the constitution understood and used the words in their known and appropriate signification, as referring only to crimes and penalties. However injurious then the act complained of may be to the interests of the defendant, yet the constitutional objection to it, as an ex post facto law, has no foundation. / It was further contended that the office of' solicitor was a public office, and being for life, was an incorporeal freehold, of which by the second section of the ninth article of the constitution, the defendant could not be deprived but by the judgment of his peers, which means a tidal by jury, or by the law of the land, which means the common law.
It is not necessary, in the view whch I have of this case, to consider what is the true meaning of the words, “ the law of the land,” as intended by our constitution. It may not however, be amiss to observe for the sake of' information that it has been determined by the Constitutional Court, in several cases, that the lex terra Contemplated by our constitution, not only means the common law, which is unquestionably the sense in which it is understood in Magna Charta, (according to all the commentators upon it) but also comprehends all acts of' force at the time of making the constitution, so that any act which then abridged any of the privileges secured by the constiution, may be considered as constitutional exceptions to the privileges themselves.
I will now proceed to consider the objection which has been just stated. This at first had great weight with me, not because the office of solicitor is a public office, for this does not appear to me to be the case. He is not appointed by the legislature, nor is he amenaable to it, for he does not possess any portion of the public authority. His admission to practice is indeed. *479 'regulated by law, but it is in the power of any wan, who will comply with the legal requisites, to become a •solicitor, independently of the will of the legislature. He can be considered in no other light than that of a private agent for the citizens of the country, who may ■employ him to do their legal business in the Courts; and although the law requires of him certain qualifications, and he receives a license from the j udges, yet his office is no more a public one than would be any other profession or trade which the legislature might choose to subject to similar regulations, and which is the practice in many other countries. But the objection of most weight is, that this act as it affects the defendant, will deprive him of a right which may fairly be considered as a species of property. It cannot be doubted that a man’s trade or profession is his property ; and if a law should be passed avowedly for the purpose of restraining any member of this bar, who was not a public officer, from exercising his profession, I should declare such a law void. But this law is made for public officers ; it is a general regulation for all the ordinaries in •the state, its object no doubt was to place a high judicial office above temptation ", and I think it a very wise and salutary object. For although the correct and upright conduct of the defendant in the exercise of both his judicial and professional duties, might have afforded ■sufficient security for the same correct conduct in future, ■and might have entitled him to an exemption from the general restriction of this law $ yet it must be admitted ■that cases may occur in which the duty of the Judge might be exposed to strong temptations, from the interest of the practitioner ; and the corruption of human nature does not permit us to expect the same integrity in every other ordinary in the state. The act has without any exception in his favor, restrained every ordinary from practising as an attorney or solicitor; and surely the legislature was . competent to pass such an act. Has it not a right to prescribe to a public officer the duties he shall perform, and to make any requi»sir *480 ^ons *‘me that ^ pleases ? It has by various acts reduced the fees of many of the public officers, ami it *ias increased the labors of some so as indirectly, by increasing their expenses, to diminish their salaries. But these acts are not therefore invalid, although they effect ¿jiC rjg.jj^s 0f office much more directly than the act under consideration. For this does not deprive the defendant of any right which was attached to the office of ordinary, as an official privilege. The profession of a solicitor never was an appendage to it. This act has indeed declared them incompatible, and therefore, requires that the ordinary while he holds his office shall not practice as an attorney or solicitor. The operation of it will no doubt oblige the defendant either to renounce his profession or resign his office. But I must repeat the distinction already made ; this act does not abridge the rights of a private citizen $ it only imposes a restraint on a public officer. ith respect to the former, the legislative power is distinctly limited by the constitution, hut the exercise of it towards the latter must from the very nature of its relation to it, be necessarily allowed a greater latitude. It is to be hoped, however, that the legislature will never require from a public officer a greater sacrifice of his ease and private interest than the public interest indispensibly demands, for no government can ever be ably and faithfully administered, unless those who administer it, are encouraged to a cheerful discharge of their duties, by a reasonable assignment of them, and a liberal support. But the act complained of is not fairly exceptionable even in this respect $ and as it does not appear to me in any view of it to be inconsistent with the constitution, the rule against the defendant must be made absolute.
Thomas Waties,
There was no appeal from this decree.