744 S.E.2d 591

**SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Respondent,**

v.

**JENNIFER M. and Venus A., Defendants,**

**Of whom Jennifer M. is the, Appellant.**

**In the interest of a minor under the age of 18.**

Appellate Case No. 2011–205406.

**No. 5147.**

Court of Appeals of South Carolina.

Heard Nov. 14, 2012.

Decided June 26, 2013.

270

Katherine Carruth Goode, of Winnsboro, for Appellant.

Calvin Leon Goodwin, of S.C. Department of Social Services, of Winnsboro, for Respondent.

HUFF, J.

Appellant, Jennifer M. (Mother), appeals an order of the family court finding Mother abused and/or neglected her child and ordering Mother's name entered into the Central Registry of Child Abuse and Neglect (Central Registry). Mother contends the family court erred in (1) finding she abused and neglected her unborn child based upon conduct that occurred when she did not know she was pregnant and ordering her name placed upon the Central Registry, and (2) improperly admitting and considering alleged results of drug tests for which there was no foundation and which violated the rule against hearsay. We reverse.

## FACTUAL/PROCEDURAL HISTORY

On June 10, 2011, the South Carolina Department of Social Services (DSS) filed a complaint for intervention against Mother. DSS filed an amended complaint for removal on July 1, 2011, after Mother and her minor child (Child) allegedly tested positive for drugs in June 2011. A probable cause hearing was held on July 7, 2011, resulting in an order filed by the family court on July 25, 2011, finding that probable cause existed for Child to have been placed in emergency protective custody and that Child was to remain in the custody of DSS. In its complaint for removal, DSS sought a finding Child was abused and/or neglected by Mother based upon Mother's alleged use of cocaine and marijuana in the presence of Child, resulting in Child testing positive for the drugs as indicated by Child's June 27, 2011 drug test and Mother's June 23, 2011 drug test. DSS also alleged abuse and neglect of Child by Mother based upon Mother's failure to obtain prenatal care and her use of drugs during her third trimester of pregnancy with Child, as indicated by Child's and Mother's positive drug tests at birth. DSS further sought placement of Mother's name on the Central Registry.

A hearing was held on DSS's complaint on July 28, 2011, at which time the following was presented: This matter came to the attention of DSS when it received an allegation Mother tested positive for certain drugs when she gave birth to Child on December 10, 2010. An investigation by DSS revealed Mother received no prenatal care before Child was born.

Over Mother's objection, a DSS caseworker testified that Mother tested positive for "benzo, marijuana, [and] opiates and she had a positive methadone level" at the time of birth. Upon investigation of the matter, DSS indicated the case on January 18, 2011, for physical neglect and abuse, and a treatment plan was implemented for Mother, to include substance abuse treatment with random drug testing along with parenting classes. Though home visits revealed no problems as far as Child's care, DSS had concerns based on Mother's failure to consistently comply with her treatment plan.[1] Over Mother's objection, the DSS caseworker testified Mother and Child were given hair strand tests during Mother's treatment, and both Mother and Child "were positive." Also over Mother's objection, a DSS investigator testified Mother and Child had a random drug test of their hair, and both tests returned positive.[2] On June 30, 2011, Child was placed into emergency protective custody and the family court found probable cause to remove Child from Mother's care.

The DSS investigator acknowledged that when she originally met with Mother at the hospital following Child's birth and questioned her concerning her pregnancy and prenatal care, while Mother admitted to drug use prior to birth of Child, Mother informed the investigator she was not aware she was pregnant until she went to the hospital with stomach pains and delivered Child. The investigator agreed that during the time she worked with her, Mother was consistent in her statement that she did not know she was pregnant. At the time of the hearing, Mother had completed her drug treatment program at Fairfield Behavioral Health Services (Fairfield Behavioral). The Clinical Counselor at Fairfield Behavioral testified Mother submitted to random drug tests on June 6 and June 16, and these tests were negative for everything except "benzo." However, Mother had provided them with a documented prescription for the drug.[3] The counselor acknowledged Fair-

---

1. The caseworker noted Mother attended three sessions in March, but missed three others in March, as well as all of April, but returned in May after being informed her case would be going to court.

2. Mother noted a "continuing objection as to the references of a positive test."

3. The court information sheet and supplemental report, submitted by DSS to the family court, notes that in regard to the circumstances

field Behavioral administered urine drug tests, which would show if a person is "actively" using drugs.[4] After speaking with both the DSS caseworker and investigator, Fairfield Behavioral recommended Mother attend parenting skills and rehabilitative psychological services programs. At the time of the hearing, Mother had two more sessions with parenting skills to be completed and had not yet attended to the psychological services program.

DSS rested its case, and Mother moved for a directed verdict on the complaint seeking a finding of abuse and neglect. Mother argued, although there had been allusions to drug tests, DSS failed to introduce any drug tests to show any substance in Child's system. Mother noted that no drug tests had been admitted into evidence because DSS had no witnesses at the hearing to substantiate that any tests were taken, that there was a proper chain of custody, that a chemist was qualified, or that there was not a mix up in the samples in delivery to the testing site. Accordingly, Mother argued, since there was no evidence concerning the drug reports, the only allegation of Mother's neglect was her failure to get prenatal care. However, the DSS caseworker acknowledged Mother did not know she was pregnant at the time. Thus, Mother contended she could not have been neglectful in failing to obtain prenatal care if she did not know she was pregnant. The family court noted, though Mother stated she did not know she was pregnant, the fact that she was pregnant indicated she was having sexual intercourse and the natural outcome of sexual intercourse is pregnancy. Because Mother admitted having used drugs and knew she was having sexual intercourse, the court denied the motion.

Mother then took the stand and testified that she did not know she was pregnant with Child. She stated that she had two previous pregnancies and knew what it felt like to be pregnant, but her "body did not have any indications of being pregnant." Mother noted that three days before she deliv-

---

surrounding Child's birth, Mother reported that she had been prescribed the drug Klonopin for her anxiety.

4. The counselor's testimony was that if Mother used cocaine, it would last in her system for 48 to 72 hours, marijuana would last from 30 to 45 days, and alcohol would last up to 12 hours.

ered Child, she pushed a van that had run out of gas, something a pregnant woman would not attempt. She also testified, because she did not know she was pregnant, she did not prepare for a baby and did not have the things needed for a baby, and her family had to get the items together while she was in the hospital. Mother admitted that, before Child was born and without knowledge of her pregnancy, she engaged in occasional, social drug use during the time she was pregnant. On cross-examination by the Guardian ad Litem (GAL), Mother denied using any drugs since Child came into DSS's custody, other than what had been prescribed to her by a doctor.

At the close of Mother's case, the GAL recalled DSS's caseworker to the stand and sought to question her about documents previously marked as Plaintiff's Exhibit 1, but not admitted into evidence. The documents were drug tests performed on June 23 and June 27, 2011. When asked what the test results revealed, Mother objected, arguing there was no foundation laid for admission of those results into evidence, and asserting there was no testimony to establish the qualification of the tests or chain of custody. The GAL argued the test results were admissible because Mother testified she had not used drugs since Child came into DSS custody "or [DSS's] involvement," and the evidence was being introduced, not for the truth of the matter asserted, but as an exception to hearsay for credibility purposes. Mother countered the matter was being offered for the truth of the matter asserted and the determination of credibility was not an exception to the hearsay rule. She further argued DSS failed to bring in the necessary witnesses to provide a proper foundation for admission of the evidence. The family court found the evidence was being offered, not for the truth of the matter asserted, but was being offered for credibility purposes, and overruled the objection. The caseworker then testified that Mother's test on June 23, 2011, was positive for cocaine. When asked about the test on Child, Mother interposed another objection asserting, even under the family court's ruling concerning admissibility based upon credibility, Child's test had nothing to do with Mother's statement that she had not used drugs, and such would not challenge the credibility of Mother. The family court sustained this objection by Mother. Plaintiff's Exhibit 1 was never offered into evidence.

At the close of all evidence, Mother renewed her motion for directed verdict, arguing a failure of proof of the allegations of abuse and neglect, and requesting the family court dismiss the case and make no findings of abuse and no neglect and no finding of placement of Mother's name on the Central Registry. The family court declined to so rule, finding abuse and neglect based upon Mother's admitted use of drugs during her pregnancy and the fact that, though Mother denied knowledge of the pregnancy, her pregnancy was the result of sexual intercourse. The court further found Mother's name should be entered into the Central Registry. The family court thereafter filed a written order for removal, finding the preponderance of the evidence supported the allegation Mother abused and/or neglected Child as defined in section 63–7–20 of the South Carolina Code, and the nature of the harm was physical abuse and willful and/or reckless neglect, and Mother should therefore be entered into the Central Registry.[5]

On September 12, 2011, Mother filed a Rule 59(e), SCRCP motion to alter or amend challenging, among other things, the family court's findings of abuse and/or neglect and ordering Mother's name be placed on the Central Registry. In particular, Mother asserted that the preponderance of the evidence did not support a finding that she physically abused and willfully and/or recklessly neglected Child, as her conduct prior to Child's birth could not serve as the basis for such finding where she had no knowledge of the pregnancy. Mother also filed, on that day, a motion for review and return of custody. Following a hearing on the motions, the family court, by order filed November 4, 2011, denied Mother's motion to alter or amend concerning its findings of abuse and/or neglect.[6] In so doing, the court found Mother admitted

---

**5.** This initial order did not specify the basis for finding abuse and neglect or entry of Mother's name on the Registry, i.e., whether it was for her and Child testing positive at birth regardless of Mother's knowledge of the pregnancy, or whether it was for their testing positive the following June, or whether it was based upon both. The family court's oral ruling, however, seems to indicate the ruling was based upon Mother's admitted use of drugs during the pregnancy.

**6.** The court continued Mother's motion concerning return of Child to her custody until the GAL had an opportunity to view Mother's home.

to using illegal drugs during her pregnancy, and though she testified she did not know she was pregnant and therefore did not knowingly abuse or neglect Child, the court found her testimony to lack credibility. The court further found Mother "participated in activity that resulted in the creation of an embryo in her body and she knew or should have known that she could become pregnant." The family court concluded, because this was not Mother's first pregnancy, she should have been aware of the physiological changes in her body, yet she made no effort to determine if she was pregnant. The family court additionally found that Mother asserted the court had not allowed the "drug testing evidence" on Mother into the record and, therefore, she should not have been found to have abused and/or neglected Child; however, the court concluded it was in error in not allowing such evidence in the record.[7]

## ISSUES

1. Whether the family court erred in finding Mother abused and neglected her unborn child based on conduct that occurred when she did not know she was pregnant.

2. Whether the family court erred in ordering Mother entered into the Central Registry of Child Abuse and Neglect based on a finding of physical abuse and willful and/or reckless neglect.

3. Whether the family court erred in admitting hearsay testimony related to alleged results of drug tests.

4. Whether the family court erred in admitting alleged results of drug tests without a proper foundation for admission of those results.

## STANDARD OF REVIEW

 In appeals from the family court, an appellate court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). "De novo review permits appellate court fact-finding, notwithstanding

---

Thereafter, in early December 2011, the court returned custody of Child to Mother upon agreement of DSS.

7. It is not clear exactly what "drug testing evidence" on Mother the family court was referring to here.

the presence of evidence supporting the trial court's findings." *Lewis v. Lewis,* 392 S.C. 381, 390, 709 S.E.2d 650, 654–55 (2011). However, while this court has the authority to find facts in accordance with its own view of the preponderance of the evidence, "we recognize the superior position of the family court judge in making credibility determinations." *Id.* at 392, 709 S.E.2d at 655. Further, de novo review does not relieve an appellant of his burden to "demonstrate error in the family court's findings of fact." *Id.* "Consequently, the family court's factual findings will be affirmed unless appellant satisfies this court that the preponderance of the evidence is against the finding of the [family] court." *Id.* at 392, 709 S.E.2d at 655 (alteration in original) (internal citation and quotation marks omitted).

## LAW/ANALYSIS

### A. Finding of Abuse and Neglect and Placement on Registry (Issues 1 & 2)

■ Mother contends the child abuse and neglect provisions of section 63–7–20 do not apply where the uncontradicted evidence shows a mother did not know she was pregnant or have any of the bodily indicators to support a conclusion that she should have known she was pregnant. Mother points to the cases of *Whitner v. State,* 328 S.C. 1, 492 S.E.2d 777 (1997) and *State v. McKnight,* 352 S.C. 635, 576 S.E.2d 168 (2003) in arguing the court should find the child abuse and neglect statutes require a knowledge element before a mother can be found to have committed abuse or neglect. Further, Mother contends the Central Registry statute imposes such an element, inasmuch as it requires the conduct be willful or reckless neglect.

Mother also argues the family court improperly imputed knowledge based solely on her having engaged in sexual intercourse, and the fact of intercourse alone, without physical symptoms or indicators of pregnancy, should not warrant a finding a mother should know she is pregnant. Additionally, Mother asserts the family court's finding in its Rule 59(e), SCRCP order concerning Mother's credibility as to her assertion that she did not know she was pregnant is unfounded. She argues the only evidence before the court was that Mother did not know she was pregnant. Finally, Mother

argues DSS failed to introduce competent evidence to support the admission of drug test results.

DSS cites *State v. Jenkins*, 278 S.C. 219, 294 S.E.2d 44 (1982) for the proposition that whether knowledge and intent are necessary elements of a statutory crime must be determined from the language of the statute, construed in light of its purpose and design. DSS contends the fact that the legislature did not include the word "knowingly," or other apt words to indicate intent or motive are necessary elements for a violation of section 63–7–20 indicates the legislature intended that a person could be found in violation of the statute even if the person had no knowledge or intent his or her act is criminal. Here, it argues, Mother abused and neglected her unborn child by engaging in conduct that presented a substantial risk of harm to the unborn child by using illegal drugs knowing she had engaged in sexual relations. Thus, Mother knew engaging in such conduct could likely affect the life, health or comfort of any child conceived. DSS cites *Whitner* for the proposition that a viable fetus is a "child" for purposes of the child abuse and endangerment statute. DSS maintains, once the family court determined Mother abused or neglected her unborn child, the court was well within its discretion in finding her name should be entered into the Central Registry. It contends, while Mother's conduct may not have been "willful," it was "reckless," as Mother's conduct of using illegal drugs during her pregnancy was in disregard of the possible harmful consequences to Child.

Section 63–7–20 of the South Carolina Code provides in pertinent part as follows:

(4) "Child abuse or neglect" or "harm" occurs when the parent, guardian, or other person responsible for the child's welfare:

(a) inflicts or allows to be inflicted upon the child physical or mental injury or engages in acts or omissions which present a substantial risk of physical or mental injury to the child....

S.C.Code Ann. § 63–7–20(4)(a) (2010).

Section 63–7–1940 provides in part as follows:

(A) At a hearing pursuant to Section 63–7–1650 or 63–7–1660, at which the court orders that a child be taken or

retained in custody or finds that the child was abused or neglected, the court:

> (1) must order that a person's name be entered in the Central Registry of Child Abuse and Neglect if the court finds that there is a preponderance of evidence that the person physically or sexually abused or wilfully or reck-lessly neglected the child. Placement on the Central Registry cannot be waived by any party or by the court.

S.C.Code Ann. § 63–7–1940(A)(1) (2010).

In *Whitner*, our supreme court addressed whether the word "child," as used in section 20–7–50 of the South Carolina Children's Code,[8] includes a viable fetus. 328 S.C. at 4, 492 S.E.2d at 778. There, Whitner pled guilty to criminal child neglect after her baby was born with cocaine metabolites in its system based upon Whitner's ingestion of crack cocaine during her third trimester of pregnancy. *Id.* at 4, 492 S.E.2d at 778–79. Our supreme court determined, in order for the sentenc-ing court to have subject matter jurisdiction to accept Whit-ner's plea under section 20–7–50, criminal child neglect under that statute would have to include "an expectant Mother's use of crack cocaine after the fetus is viable." *Id.* at 5, 492 S.E.2d at 779. The majority ultimately concluded section 20–7–50 was "applicable to an expectant mother's illegal drug use after the fetus is viable." *Id.* at 15, 492 S.E.2d at 784. The majority further found, because it is common knowledge that use of cocaine during pregnancy can harm a viable unborn child, Whitner could not claim she lacked fair notice that her behavior of ingesting crack cocaine during her third trimester of pregnancy was proscribed by section 20–7–50. *Id.* at 15–16, 492 S.E.2d at 784–85.

In *McKnight*, our supreme court addressed the issue of whether sufficient evidence of McKnight's criminal intent to commit homicide by child abuse was presented to survive a directed verdict motion, where McKnight asserted no evidence was presented that she knew the risk that her cocaine use could result in the still birth of her child. 352 S.C. at 644, 576 S.E.2d at 172–73. Recognizing the court noted in *Whitner*

---

8. Section 20–7–50 was the predecessor to current code section 63–5–70, which proscribes unlawful conduct toward a child. S.C.Code Ann. § 63–5–70 (2010).

that, although the precise effects of maternal crack use during pregnancy are somewhat unclear, it was "well documented and within the realm of public knowledge that such use can cause serious harm to the viable unborn child," and this common knowledge put Whitner on notice that her conduct in utilizing cocaine during pregnancy constituted child endangerment. *Id.* at 645, 576 S.E.2d at 173. In McKnight's case, it was undisputed that she took cocaine on numerous occasions while she was pregnant, and McKnight admitted to the DSS investigator that *she knew she was pregnant* and that she had been using cocaine when she could get it. *Id.* at 645–46, 576 S.E.2d at 173. The court then held, "Given the fact that it is public knowledge that usage of cocaine is potentially fatal, we find the fact that McKnight took cocaine *knowing she was pregnant* was sufficient evidence to submit to the jury on whether she acted with extreme indifference to her child's life." *Id.* at 646, 576 S.E.2d at 173 (emphasis added).

In *Jenkins,* the defendant was convicted of the misdemeanor crime of unlawful neglect of a child, in violation of section 16–3–1030 [9] of the South Carolina Code, after she left her eight year-old and five year-old sleeping alone in the house for an hour, and the two children died in a fire during that time. 278 S.C. at 220–21, 294 S.E.2d at 45. In addressing whether the statute required proof of criminal negligence, as opposed to simple negligence, our supreme court noted that the legislature may forbid the doing of an act and make its commission criminal without regard to the intent or knowledge of the doer, and the knowledge or ignorance of the act's criminal character is immaterial on the question of guilt. *Id.* at 221–22, 294 S.E.2d at 45. The court must look to the language of the statute, construed in light of its purpose and design, to determine whether knowledge and intent are necessary elements of a statutory crime. *Id.* at 222, 294 S.E.2d at 45. Noting the statute in question was enacted to provide protection for those persons whose tender years or helplessness rendered them incapable of self-protection, the court concluded the legislature's failure to include "knowingly" or other apt words to indicate criminal intent or motive evidenced "the

9. This statute was repealed and similar provisions appeared in section 20–7–50. *Id.* at 220 n. 1, 294 S.E.2d at 45 n. 1. As we previously noted, section 20–7–50 is the predecessor to current code section 63–5–70.

legislature intended that one who simply, *without knowledge or intent that his act is criminal,* fails to provide proper care and attention for a child or helpless person of whom he has legal custody, so that the life, health, and comfort of that child or helpless person is endangered or is likely to be endangered, violates § 16–3–1030 of the Code." *Id.* at 222, 294 S.E.2d at 45–46. (emphasis added).

Here, there is little doubt that Mother engaged in acts or omissions which presented a substantial risk of physical injury to Child based upon her admission of drug use prior to Child's birth, and such acts could qualify as child abuse or neglect. *See Whitner,* 328 S.C. at 15, 492 S.E.2d at 784 (holding child neglect under the criminal child neglect statute would include an expectant mother's illegal drug use after the fetus is viable). Further, Mother could be susceptible to a finding of abuse and/or neglect under section 63–7–20, regardless of whether she had intent to harm Child through her drug use, or knowledge of the possible harm to Child from her drug use. *See McKnight,* 352 S.C. at 645, 576 S.E.2d at 173 (finding, even if no evidence was presented that McKnight knew the risk that her cocaine use could result in the still birth of her child, common knowledge that such use can cause serious harm to a viable unborn child is sufficient to put one on notice that conduct in utilizing cocaine during pregnancy constitutes child endangerment); *Jenkins,* 278 S.C. at 222, 294 S.E.2d at 45–46 (holding the legislature's failure to include "knowingly" or other apt words to indicate criminal intent or motive evidenced the legislature's intent that one who, without knowledge or intent that his act is criminal, fails to provide proper care and attention for a child or helpless person of whom he has legal custody, so that the life, health, and comfort of that child or helpless person is endangered or is likely to be endangered, violates the criminal statute proscribing unlawful neglect of a child). However, we do not believe Mother can be found to have abused and/or neglected Child pursuant to section 63–7–20 where there is no evidence Mother knew or should have known that she was pregnant with a viable fetus at the time of her drug use. Though knowledge that her actions could harm Child is not necessary for a finding of abuse and/or neglect, this is not the same as knowledge that a child who could be harmed actually exists.

■■ It is well settled that in interpreting a statute, the court's primary function is to ascertain legislative intent, and, where a statute is complete, plain, and unambiguous, legislative intent must be determined from the language of the statute itself. *Whitner*, 328 S.C. at 6, 492 S.E.2d at 779. "A statute as a whole must receive practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers." *Sloan v. S.C. Bd. of Physical Therapy Exam'rs*, 370 S.C. 452, 468, 636 S.E.2d 598, 606 (2006). "Any ambiguity in a statute should be resolved in favor of a just, equitable, and beneficial operation of the law." *State v. Sweat*, 386 S.C. 339, 351, 688 S.E.2d 569, 575 (2010) (quoting *Bennett v. Sullivan's Island Bd. of Adjustment*, 313 S.C. 455, 458, 438 S.E.2d 273, 274 (Ct.App.1993)). Further, our courts will reject any interpretation which would lead to a result so absurd that the legislature could not have intended it. *Id.; see also S.C. Dep't of Soc. Servs. v. Holden*, 319 S.C. 72, 78, 459 S.E.2d 846, 849 (1995) (noting our courts will interpret statutes so as to promote legislative intent and escape absurd results).

Section 63–1–20 of the South Carolina Code states "[i]t shall be the policy of this State to concentrate on the prevention of children's problems as the most important strategy which can be planned and implemented on behalf of children and their families." S.C.Code Ann. § 63–1–20(C) (2010). It is difficult to see how a finding of abuse or neglect or inclusion of a person's name on the Central Registry for ingestion of harmful drugs during pregnancy will promote the prevention of children's problems *where the mother is not aware of the pregnancy* at the time of her drug use.

Further, we believe our case law supports this interpretation of the statute. Though *Whitner* and *Jenkins* both involved interpretation of legislative intent of criminal statutes, the policy behind these statutes clearly involved the protection of children and prevention of harm to them. Thus, we find inconsequential the fact that these cases involved statutes providing punishment for criminal conduct, and find no merit to DSS's attempt to distinguish *McKnight* on this basis.

In *McKnight*, our supreme court specifically noted it was undisputed that McKnight took cocaine on numerous occasions while she was pregnant, and McKnight admitted to the DSS

investigator that *she knew she was pregnant* and that she had been using cocaine when she could get it. The court then held, given that it is public knowledge that usage of cocaine during pregnancy is potentially fatal, the fact that McKnight took cocaine *knowing she was pregnant* was sufficient evidence of McKnight's criminal intent to commit homicide by child abuse to submit the matter to the jury.

Here, the only evidence presented was that Mother did not know she was pregnant until she gave birth to Child. Though the family court, in its order denying Mother's motion to amend, made a finding that Mother's testimony in this regard lacked credibility, we believe this finding is against the preponderance of the evidence. Mother adamantly denied knowing she was pregnant with Child until Child's birth. She testified that she had two previous pregnancies and knew what it felt like to be pregnant, but her "body did not have any indications of being pregnant" with Child, that three days prior to delivering Child she engaged in physical activity a pregnant woman would not attempt, and she had no items at home that a pregnant woman would normally obtain in anticipation of the birth of a child. Further, the DSS investigator who met with Mother at the hospital following Child's birth testified Mother informed her that she was not aware she was pregnant until she went to the hospital with stomach pains and delivered Child. This investigator also agreed that, during the time she worked with her, Mother was consistent in her statement that she did not know she was pregnant.

Additionally, the court information sheet/supplemental reports submitted by DSS to the family court in conjunction with its filings indicate Mother reported during the investigation that she did not receive prenatal care because she did not know she was pregnant, she presented to the hospital emergency room in severe pain after pain medication she had received from a friend did not relieve her pain, and while in the restroom of the hospital, she gave birth to Child. At no time did DSS present any evidence Mother knew, or should have known, she was pregnant before the birth of Child. Nor did DSS ever argue to the family court that Mother knew or should have known she was pregnant prior to the birth, or maintain Mother was not credible in this respect. According-

ly, we hold this finding by the family court is against the greater weight or preponderance of the evidence.

■ We likewise give no credence to the family court's determination that Mother's participation in sexual activity alone was sufficient to show she knew or should have known she "could become pregnant." The circumstances surrounding Mother becoming pregnant were not explored at all during the hearing.[10] Thus, we do not believe that the family court's reasoning that Mother became pregnant, and, therefore, must have engaged in sexual activity, is sufficient to show she knew or should have known she was pregnant. Nor do we believe the fact that Mother "could become pregnant" is adequate to expose her to a finding of abuse and/or neglect of a child. Additionally, we find no support for the family court's conclusion that, because it was not Mother's first pregnancy, she should have been aware of the physiological changes occurring in her body, but she made no effort to determine if she was pregnant.[11]

Interpreting section 63–7–20 so as to promote legislative intent and escape absurd results, and resolving any ambiguity

10. For example, no evidence was presented concerning Mother's possible use of contraceptives, whether she had reason to believe she would not become pregnant as the result of any sexual encounter at that time, or whether she had experienced any false negative pregnancy tests thereafter. A likely explanation for this is that DSS did not contest Mother's assertion that she was unaware of the pregnancy, or attempt to show that Mother should have known or suspected that she was pregnant prior to the birth of Child.

11. Despite the family court's apparent personal belief that a woman who has been through a previous pregnancy would have been aware of physiological changes in her body, it is common knowledge that women can carry a pregnancy full term with no idea that they were pregnant. Discovery Fit & Health even has a show about such situations. http://health.discovery.com/tv/i-didnt-know-i-was-pregnant/. This website includes a list of ten reasons a woman might not know she was pregnant until she was in labor. http://health.howstuffworks.com/pregnancy–and–parenting/pregnancy/issues/10–reasons–you–might–not–know–you–arepregnant.htm. Mother's testimony that she had been previously pregnant and knew the symptoms of pregnancy yet her body did not show these indications supports that she did not know she was pregnant. As noted, the credibility of this testimony was not challenged by DSS. Further, as previously noted, there was no evidence presented concerning whether Mother made any effort to determine if she was pregnant before the birth.

in favor of a just, equitable, and beneficial operation of the law, we believe the family court erred in finding Mother abused and neglected Child where the evidence shows Mother did not know or have reason to know she was pregnant at the time of the conduct upon which the alleged abuse and/or neglect was based. Under the family court's ruling in this matter, every woman who engages in sexual intercourse and becomes pregnant as a result could be found to have abused and neglected her unborn child based upon any conduct potentially harmful to the unborn child, even though the woman had no knowledge of her pregnancy. We agree with Mother that her conduct, prior to the birth of Child, should not serve as a basis for a finding of abuse or neglect where the evidence shows she had no knowledge and there is no evidence she had reason to know of the pregnancy at the time of the conduct. Based upon the above reasons, we likewise find the family court erred in ordering Mother's placement on the Central Registry pursuant to section 63–7–1940.

## B. Admission of Evidence Relating to Drug Tests (Issues 3 & 4)

Mother next contends the family court erred in admitting any evidence related to drug tests conducted at the time of birth and in June 2011, and such evidence could not be considered on the question of whether DSS met its burden of proof. She argues the family court erred in admitting hearsay testimony related to alleged results of drug tests, as well as in admitting alleged results of drug tests without a proper foundation for admission of those results. In regard to evidence concerning the alleged test results at the time of birth, Mother notes DSS did not offer the written report of the drug tests into evidence and failed to offer any evidence concerning the circumstances surrounding the results of those tests. As to the June 2011 alleged drug tests, Mother argues DSS had the two written reports marked for identification, but DSS never sought to admit the reports into evidence and, again, failed to offer any evidence concerning the circumstances surrounding those test results. Mother maintains DSS did not even attempt to lay a proper foundation for any of the drug test evidence, and that she was deprived of the opportunity to challenge the reliability of the drug test evidence.

Accordingly, Mother argues all of the drug test evidence was inadmissible and none of it should be considered in reviewing her challenge to the sufficiency of the evidence for a finding of abuse or neglect and for entry on the Central Registry.

DSS does not argue in its brief against Mother's assertion that the drug test evidence was inadmissible. Rather, it argues, though "the family court may have erred in admission of drug test evidence," Mother was not prejudiced by the admission of such evidence. DSS notes the caseworker testified Mother had freely admitted to her illegal drug use prior to Child's birth, and Mother, in her own testimony, admitted to her use of illegal drugs prior to the birth. Thus, DSS maintains there was sufficient evidence regarding Mother's use of illegal drugs during her pregnancy for the court to make a finding of abuse or neglect and for the court to order entry of Mother's name on the Central Registry. In its brief, DSS maintains Mother's admission of her illegal drug use was the basis for the family court's findings in this regard.

We have already determined that Mother's conduct prior to the birth of Child could not serve as a basis for a finding of abuse or neglect or placement on the Central Registry where the evidence shows Mother had no knowledge or reason to know of the pregnancy at the time of the conduct. Thus, accepting DSS's assertion in its brief that the trial court's ruling was based upon Mother's admitted drug use while pregnant, the drug test evidence on Mother and Child at the time of Child's birth is inconsequential and cannot serve as a basis for the family court's finding. Accordingly, we need not reach the issue concerning the admission of drug test evidence.

At oral argument, however, DSS backed away from the stance it took in its brief that the family court's decision was based upon Mother's use of drugs while pregnant. Nonetheless, we find no properly admitted evidence to support a finding of abuse or neglect from any of the subsequent June 2011 testing.

Testimony concerning the June 2011 test result on Child was not admitted, and the family court did not thereafter reverse its ruling concerning the inadmissibility of evidence on Child's June 2011 test result. Thus, the only evidence ulti-

mately admitted by the family court concerning the June 2011 drug test results related solely to Mother.[12]

To the extent the family court may have relied on evidence concerning Mother's June 2011 drug test results to make its finding of abuse or neglect and ordering Mother's name be placed on the Central Registry, a thorough review of the record convinces us there was no properly admitted evidence to support such a determination.[13] Further, even if properly

---

12. Even if it could be argued the trial court admitted, or intended to admit, the June 2011 drug test evidence on Child, we find such admission would have been improper against Mother's timely and consistent objections based on hearsay and foundation. DSS made no attempt to lay any foundation whatsoever for the admission of testimony on the results of these tests. There is no evidence the witnesses had any personal knowledge that would qualify them to testify as to the results or validity of the drug tests, nor is there any indication that such tests results were admissible under any exception to the hearsay rule, such as a business records exception. *See* Rule 801(c), SCRE (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); Rule 802, SCRE ("Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court of this State or by statute."); Rule 803(6), SCRE (often cited as the business records exception, providing the following is not excluded by the hearsay rule: "Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness...."); *State v. Rich*, 293 S.C. 172, 173, 359 S.E.2d 281, 281 (1987) (holding, even where evidence may be admissible under an exception to the hearsay rule, such will not absolve the offering party from the usual requirements of authentication).

13. As to admission of evidence concerning the drug testing of Mother's hair in June 2011, the family court erred in determining it was admissible based on the judge's finding it went to Mother's credibility. Regardless of DSS's motive in seeking admission of the evidence, if the evidence was being admitted to prove that Mother lied about her subsequent drug use, it was being admitted to prove the truth of the matter asserted. *See* Rule 801(c), SCRE (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); Rule 802, SCRE ("Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court of this

admitted, the evidence of Mother's June 2011 drug test results would be irrelevant to abuse and neglect of Child, as there was no evidence that such drug use by Mother at that time resulted in any abuse or neglect of Child.

## CONCLUSION

We hold the family court erred in finding Mother abused and neglected her unborn Child based upon conduct occurring while Mother did not know or have reason to know she was pregnant. Further, the only evidence admitted by the family court subsequent to Child's birth concerning drug tests related only to Mother; this evidence was improperly admitted based upon Mother's hearsay and foundation objections; and, even if properly admitted, there was no evidence any subsequent drug use by Mother caused abuse or neglect of Child. Accordingly, the family court's finding of abuse and neglect and ordering placement of Mother's name on the Central Registry is

**REVERSED.**

GEATHERS, J., concurs.

THOMAS, J., concurring in result only.

---

State or by statute."). Further, we do not believe Mother's June 2011 test result necessarily serves to impeach Mother. On cross-examination, Mother was asked if she "[had] used drugs since [Child] has come into [DSS's] custody" to which Mother responded she had only used what had been prescribed by a doctor. Child did not go into DSS's custody until after Child was placed into emergency protective custody on June 30, 2011, after the June drug test. Mother did not, as was argued to the family court, claim she had not used drugs since DSS's involvement with Child, as she was only asked about drug use subsequent to Child being placed in DSS custody. Lastly, the family court addressed the admissibility of evidence of Mother's drug test result on the basis of hearsay, finding that it went to Mother's credibility, but it did not address the objection made by Mother as to the lack of foundation for the evidence and failure of DSS to present evidence concerning the validity of the test results. *See Rich*, 293 S.C. at 173, 359 S.E.2d at 281 (holding, even where evidence may be admissible under an exception to the hearsay rule, such will not absolve the offering party from the usual requirements of authentication).