**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Heather Smith, James D. Hughes, Joshua K. Smith, and
Gregory Meno, Defendants,

Of Whom Heather Smith is the Appellant.

In the interest of minor children under the age of
eighteen.

Appellate Case No. 2013-001578

Appeal From Greenville County
Robert N. Jenkins, Sr., Family Court Judge

Unpublished Opinion No. 2015-UP-520
Heard September 10, 2015 – Filed November 12, 2015

**REVERSED**

John D. Elliott, of Law Offices of John D. Elliott PA, of
Columbia, for Appellant.

Deborah Murdock, of Murdock Law Firm LLC, of Mauldin, for Respondent.

Don J. Stevenson, of Don J. Stevenson, Attorney at Law, of Greenville, for the Guardian ad Litem.

_____

**PER CURIAM:** The South Carolina Department of Social Services (SCDSS) brought this action against Heather Smith (Mother), James D. Hughes, Joshua K. Smith, and Gregory Meno, seeking removal of Mother's four children.[1] The family court issued an ex parte order granting SCDSS emergency protective custody of the children and later approved a placement plan under which the children remained in the legal and physical custody of SCDSS while the matter was pending. Following the merits hearing, the family court issued an order that included a finding that SCDSS proved by a preponderance of the evidence that all four minor children were at a substantial risk of medical neglect by Mother. Mother appeals this finding, challenging the sufficiency of evidence to support this finding and the admission into evidence of certain documents. We reverse.

SCDSS's allegations of medical neglect resulted from reports that Mother's youngest child suffered a skull fracture the day before her third birthday and Mother missed several follow-up medical appointments for the child without rescheduling them. In the appealed order, the family court found all four minor children were at a substantial risk of medical neglect by Mother based on her failure to keep appointments to assess and treat this injury and to follow proper procedures for assessment of the injury after the fact. The family court also approved a modified treatment plan under which Mother was to complete parenting classes, undergo a mental health assessment, keep all medical appointments for the minor children, and cooperate with SCDSS.[2]

_____

[1] A fifth child was born to Mother shortly before the merits hearing. The family court ordered this child to be added as a child of interest in the matter, but allowed her to remain in Mother's physical and legal custody.

[2] Under the plan, Mother received legal and physical custody of the child who was injured and the child who was born during the pendency of this litigation provided the children continued to reside with Mother's maternal aunt. This requirement could be removed without further court order upon the approval of SCDSS. At the time of the final merits hearing, Mother's three older children were living with their

"In appeals from the family court, an appellate court reviews factual and legal issues de novo." *S.C. Dep't of Soc. Servs. v. Jennifer M.*, 404 S.C. 269, 276, 744 S.E.2d 591, 595 (Ct. App. 2013). "*De novo* review permits appellate court fact-finding, notwithstanding the presence of evidence supporting the trial court's findings." *Lewis v. Lewis*, 392 S.C. 381, 390, 790 S.E.2d 650, 654-55 (2011). Nevertheless, we recognize that "[t]he highly fact-intensive nature of family court matters lends itself to a respect for the factual findings of our able and experienced family court judges[,] who are in a superior position to assess the demeanor and credibility of witnesses." *Id.* at 390, 709 S.E.2d at 654. Based on this deference, we will affirm the family court's findings of fact unless the appellant convinces us the preponderance of the evidence is against the findings of the family court. *Id.* at 392, 709 S.E.2d at 655. After reviewing the record on appeal and the briefs filed on behalf of both Mother and SCDSS and hearing oral argument in this matter, we conclude Mother has convinced us the preponderance of the evidence does not support the family court's findings that she was culpable of medical neglect.

In finding the children were at risk of medical neglect by Mother and intervention by SCDSS was necessary, the family court cited section 63-7-20(4) of the South Carolina Code (2010). Under section 63-7-20(4)(c), "'[c]hild abuse or neglect' or 'harm' occurs when the parent . . . fails to supply the child with . . . health care though financially able to do so . . . *and the failure to do so has caused or presents a substantial risk of causing physical or mental injury.*" (emphasis added). When SCDSS initiates protective services in an abuse and neglect proceeding such as the one before us, it "must prove its case by the preponderance of the evidence." *Aiken Cty. Dep't of Soc. Servs. v. Wilcox*, 304 S.C. 90, 93, 403 S.E.2d 142, 144 (Ct. App. 1991).

Without question, one of the children suffered a serious traumatic head injury and Mother admitted she missed several follow-up medical appointments for this child, including CT scans ordered by a neurosurgeon. However, we find no evidence in the record indicates that Mother's failure to keep any of the appointments caused or presented a risk of injury to this child or any of her siblings. SCDSS did not challenge Mother's testimony that during the two days immediately following her

---

father, Joshua K. Smith, and the family court declined to change their current placement. Mother and Smith later received joint custody of these children in a separate action.

injury, the child underwent at least two scans and was checked for signs of trauma and physical abuse before she was released and that the discharge papers indicated a follow-up appointment would be set up "if needed."  Although the neurosurgeon who saw the child at a follow-up visit later advised conducting another CT scan "to ensure the skull fracture was resolved" and the child was "neurologically intact," he did not testify at the merits hearing or give a deposition, and no other medical professional gave an opinion as to whether an additional scan was necessary. Significantly, SCDSS had custody of the children from September 11, 2012, when the family court signed the ex parte order placing the children in emergency protective custody, until May 9, 2013, when the merits hearing concluded; however, there was no evidence it ever attempted to schedule the CT scan previously ordered by the neurosurgeon.   In addition, although SCDSS was notified on August 14, 2012, of the child's injury and several missed appointments, it apparently never invoked its right to petition the family court for an order finding that any of the medical care Mother allegedly failed to supply was "necessary to prevent death or permanent harm to the child."  S.C. Code Ann. § 63-7-950 (2010).

We also find no evidence demonstrates that any of the other missed appointments resulted in harm or a risk of harm to any of the children.  As to the child who was injured, Mother admitted she missed appointments in August and September 2012; however, at SCDSS's direction, she took the child to a well-child checkup on August 20, 2012, and nothing was discovered during that visit that would require additional medical care.  In early September 2012, Mother also took the child to a forensic interview scheduled by SCDSS.  The forensic interview took place at the same facility where Mother had missed an appointment that was scheduled for the child immediately after her injury.

We also find no evidence that Mother subjected the older children to a risk of medical neglect.  In its written order, the family court made no findings specifically addressing risk of harm to any of the older children, and during oral argument, counsel for SCDSS conceded the family court's finding that there was a risk of harm to these children was problematic.[3]

---

[3] In its written order, the family court found only that all four children were at a substantial risk of medical neglect by Mother.  However, when announcing its ruling from the bench, the court described the risk to the three older children as "minimal."

Based on the foregoing, we hold Mother met her burden in this appeal to show the preponderance of the evidence did not support the family court's findings that she endangered the physical or mental health of any of her children by failing to supply them with adequate health care.  Mother has also appealed the family court's admission of certain medical documents, arguing they were inadmissible hearsay; however, in view of our conclusion that the record does not support a finding that Mother was culpable of medical neglect regarding any of the minor children, we decline to address this issue.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598, (1999) (holding an appellate court need not address remaining issues on appeal when its determination of a prior issue is dispositive of the appeal).

**REVERSED.**

**HUFF, WILLIAMS, and THOMAS, JJ., concur.**